## James F. Bishop, Administrator, Appellee, v. Victor Chemical Works, Appellant.

### Gen. No. 22,667.

1. MASTER AND SERVANT, § 98*—*how section of Factory Act relating to removal of dangerous fumes arising from any process or injurious dust construed.* The phrase "of a character injurious to the health of the persons employed, which is created in the course of a manufacturing process," used in section 12 of the Factory Act (J. & A. ¶ 5397), providing that "all poisonous or noxious fumes or gases arising from any process, and all dust of a character injurious to the health of the persons employed, which is created in the course of a manufacturing process * * * shall be removed," etc., refer to and modify the preceding word "dust" and not the preceding words "fumes or gases," making the true intent and meaning of the sentence to be that all poisonous or noxious fumes or gases arising from any process and also all dust of such described character shall be removed.

2. MASTER AND SERVANT, § 98*—*mandatory effect of section of Factory Act relating to removal of dangerous fumes or injurious dust.* Section 12 of the Factory Act (J. & A. ¶ 5397), providing that poisonous or noxious fumes or gases arising from any process and all dust of a certain character which is created in the course of a manufacturing process within a factory, mill or workshop "shall be removed, as far as practicable, by either ventilating or exhaust devices," defines what constitutes negligence and is mandatory.

3. MASTER AND SERVANT, § 685*—*when evidence shows negligence per se in violation of Factory Act as to removal of dangerous fumes or dust.* Evidence *held* to show negligence *per se* under section 12 of the Factory Act (J. & A. ¶ 5397), requiring the removal, as far as practicable, by either ventilating or exhaust devices, of poisonous or noxious fumes or gases arising from any process, where deceased was killed by hydro-cyanic gas in endeavoring to rescue fellow employees from a tank which contained no ventilating or exhaust devices.

4. MASTER AND SERVANT, § 190*—*what does not constitute violation of order of superior officer as to change in appliances or materials.* The adding of an additional outlet to a tank similar to others already existing, for the purpose of draining the contents of the tank, by defendant's foreman, *held* not to violate an order

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

given him by his superior officer that no changes were to be made in the materials used in the manufacture of anything in that department or the appliances without consulting defendant's superintendent.

5. MASTER AND SERVANT, § 190*—*when foreman is not volunteer in interpreting order of superior as to change in appliances or materials.* The ordering by defendant's foreman that a certain tank under his supervision should be cleaned out did not make him a volunteer as to an order given him by his superior officer that no changes were to be made in the materials used in the manufacture of anything in that department or the appliances without consulting defendant's superintendent, as the question whether the proposed work was within the rule of the order was one it was necessary for him to decide, and he could misunderstand, misapprehend, misinterpret or disobey it without becoming a mere volunteer.

6. MASTER AND SERVANT—*when duty lies upon foreman to endeavor to save employees placed in dangerous position.* Where defendant's employees were placed in a perilous position while working within the scope of their employment, *held* that defendant and plaintiff's decedent, as defendant's foreman, had the duty to do everything that gave promise of saving the employees' lives, regardless of difficulty or expense, in an action to recover damages for the death of decedent while attempting to save the employees.

7. WORKMEN'S COMPENSATION ACT, § 2*—*what is effect of electing not to pay compensation under.* If defendant's negligence caused the peril of its employees from which plaintiff's intestate as defendant's foreman tried to rescue them, defendant would be liable notwithstanding the intestate may have gone outside of the scope of his authority in doing so, in an action for damages against an employer who had elected not to pay compensation under the Workmen's Compensation Act.

8. MASTER AND SERVANT, § 760*—*when question for jury whether negligence of master proximately contributes to death of servant.* Whether defendant's negligence in violation of section 12 of the Factory Act (J. & A. ¶ 5397), requiring removal as far as practicable of certain poisonous or noxious fumes or gases and certain dust in a factory, mill or workshop, proximately contributed to the death of plaintiff's intestate, *held* to be a question for the jury, even though defendant could not foresee its negligence would result in the particular accident.

Appeal from the City Court of Chicago Heights; the Hon. CHARLES H. BOWLES, Judge, presiding. Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at the October term, 1916.   Affirmed.   Opinion filed December 21, 1917.   Rehearing denied January 2, 1918.

THOMAS C. ANGERSTEIN and CRAIG H. HOOD, for appellant; GEORGE W. ANGERSTEIN, of counsel.

FRANCIS X. BUSCH, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by the defendant below, Victor Chemical Works, a corporation, from a judgment entered by the City Court of Chicago Heights in favor of James F. Bishop, as administrator of the estate of Ross Wreath, deceased.

. The action was on the case to recover damages for alleged negligence resulting in the death of the administrator's intestate on November 12, 1914, while employed by defendant in its factory at Chicago Heights where it was engaged in the manufacture of chemicals.

Deceased met his death in an attempt to rescue from a tank in defendant's factory, under circumstances hereinafter stated, two servants of the defendant.

The tank in question was located on the second floor of defendant's factory and upon a platform about five feet above the floor. A stairway led from the floor to the platform. The tank was four feet in diameter and six feet high, was of wood and lined with lead. On one side of the tank there were five lead teats or outlets, through which the liquid was drained from the tank. These outlets were about three-fourths of an inch in diameter, the lowest one being about two or three inches from the bottom of the tank. Above the tank was a box in which was placed sodium ferrocyanide. This was siphoned into the tank which contained phosphoric acid. A sediment, called prussian blue was

produced, which, being heavier than the liquid, settled to the bottom of the tank. Fumes of prussic acid formed in the process and this was held mechanically in the solution. Prussic acid when confined is perhaps the strongest and quickest acting .poison known.

On the morning of the day of the accident, deceased, who was defendant's foreman in that department, decided to have this tank cleaned out in order to put a valve seat in the bottom of it, and at noon on that day told one Boyce, who was acting as assistant foreman to the deceased, to tell the men to clean out the tank after dinner and also to tell them not to stay in the tank too long. There is a conflict in the evidence as to whether this warning was given as directed, but Boyce directed two of the laborers, whose names were Razinsky and Luderman, to clean out the tank, who, in doing so, while under the control of Boyce, were overcome by the 'gas, cried for help, and deceased, who responded to their cries and tried to rescue them from the tank, was himself overcome and taken out dead. His death was immediately due to the hydrocyanide gas.

The defendant was doing a business which brought it within the scope of the Workmen's Compensation Law. It had, prior to the accident, filed with the Industrial Board its written election not to pay compensation. It thereby deprived itself of the defenses of contributory negligence, assumed risk and fellow-servant. Nevertheless, it was necessary for plaintiff to prove negligence as alleged in his declaration, or some count thereof.

The declaration contained four counts, the third and fourth of which charged negligence under the twelfth section of the Factory Act. This section is as follows:

"All factories, mercantile establishments, mills or workshops shall be kept free from gas or effluvia aris-- ing from any sewer, drain, privy or other nuisance .on

the premises. All poisonous or noxious fumes or gases arising from any process, and all dust of a character injurious to the health of the persons employed, which is created in the course of a manufacturing process, within such factory, mill or workshop, shall be removed, as far as practicable, by either ventilating or exhaust devices." Hurd's Rev. St. ch. 48, sec. 12 (J. & A. ¶ 5397).

There were no ventilating or exhaust devices upon or in the tank, and the proof tended to show that there was at the time of the accident in general use such devices, and that these were practicable and if used would have prevented the accident.

The defendant contends this section is not applicable. We think it is. If we analyze the last sentence of the section, which is the part which must be construed, it is apparent that the phrases "of a character injurious to the health of the persons employed, which is created in the course of a manufacturing process" refer to and modify the preceding word "dust" and do not modify the preceding words "fumes and gases." The true intent and meaning of the sentence seems to be, that all poisonous or noxious fumes or gases arising from any process and also all dust of such described character within such factory, mill or workshop, "shall be removed, as far as practicable, by either ventilating or exhaust devices." This language is mandatory. It defines what shall constitute negligence. It does not leave open for other determination the question of whether the situation is dangerous or not dangerous to which its provisions apply. The only limitation which it places upon the direction to use these devices for removing fumes or gases arising from any process within such mill, factory, or workshop, is "as far as practicable." This limitation was covered by the evidence of plaintiff, and the violation of the statute as proved was negligence *per se*. *Commonwealth Elec. Co. v. Rose*, 214 Ill. 545; *Wahlman v. C. Becker Milling Co.*, 279 Ill. 612.

The defendant offered evidence for the purpose of showing that the deceased acted outside the scope of his employment in ordering a valve seat put in the tank.   The trial court in instructions to the jury ignored this defense, and particularly in instruction No. 5, given at the request of the plaintiff (which directed a verdict), omitted this from the essential things to be proved.   It is urged this was error.   We do not think so for the reason that, as a matter of law, the supposed defense was not established.   The evidence which is most relied on by appellant is that of Holbrook, the chief chemist, who placed the deceased in charge of the department in which deceased worked and who testifies he at that time told the deceased "that no changes were to be made in the materials used in the manufacture of anything in that department, or the appliances without consulting Mr. Burnham or myself."   This evidence of Holbrook is uncontradicted.   Burnham was the superintendent of the factory.

There were five lead outlets in the side of the tank. The proposed work to be done was making another similar outlet in the bottom of it.   We are unable to see how the doing of this work violated the order to which Holbrook testifies.   Certainly it would not make any change in the materials used in the manufacture, nor do we think it would amount to a change of appliances.   It was apparently to be done to remedy an existing defect in an appliance which was not to be changed, and if it had been done before the sediment had been allowed to collect in the bottom of the tank, would have made the accident impossible.

Even if the action of Wreath in ordering the tank cleaned out could be construed as disobeying the order of Holbrook, this would not make him a volunteer for the reason that he was acting within the sphere of, and not outside the scope of, his employment.   He was the foreman and, as such, the question of whether the pro-

posed work was within the rule announced by Hol-
brook was one which under the circumstances it was
necessary for him to decide. He could misunderstand,
misapprehend, misinterpret or disobey it without be-
coming a mere volunteer. *Spokane & I. E. R. Co. v.
Campbell*, 241 U. S. 497 [12 N. C. C. A. 1083]. More-
over, the trial court may have proceeded upon the the-
ory that the question of whether the deceased acted
within the scope of his employment at the time he or-
dered the tank cleaned out was wholly immaterial and
that the question was whether Luderman and Razin-
sky were within the scope of their employment at the
time they were overcome and cried out for help. If
the court did so hold, we think this was the correct
view.

There was no evidence which tended to show that
Luderman and Razinsky were acting outside the scope
of their employment, or violating any order of their
superiors at the time they were overcome, and, since
they were put in a perilous position while working
within the scope of their employment, it became the
duty of the defendant, and the deceased as its foreman
representing the defendant, to do everything that
gave promise of saving their lives regardless of diffi-
culty and expense. *Bessemer Land & Improvement
Co. v. Campbell*, 121 Ala. 51. Even assuming that de-
ceased went outside the scope of his employment
either in giving the order to clean out the tank, or put
the valve seat in, this would not affect the right of his
administrator to recover if the negligence of the de-
fendant caused the peril from which deceased tried to
rescue them. The cases cited by appellant are not ap-
plicable where, as here, the defendant may not avail
itself of the defenses of contributory negligence, as-
sumed risk and fellow-servant.

As was said in the recent case of *Eugene Dietzen
Co. v. Industrial Board of Illinois*, 279 Ill. 11: "A
volunteer is one who introduces himself into matters

which do not concern him, and does, or undertakes to do, something which he is not bound to do or which is not in pursuance or protection of any interest of the master, and which is undertaken in the absence of any peril requiring him to act as on an emergency." Conversely the court states that an accident occurs to an employee in the course of his employment if it takes place "while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing." Within that rule Wreath was in the course of his employment when he met the accident which resulted in his death.

It is also urged that the alleged negligence was not the proximate cause of the death of deceased. Undoubtedly if the violation of the statute did not proximately contribute to the death of deceased, plaintiff could not recover. This, however, was a question for the jury to decide under proper instructions from the court. We cannot hold, as a matter of law, that the negligence alleged and proved was not the proximate cause of the death of Wreath, even if it be conceded that the defendant could not foresee its negligence would result in this particular accident. *Siegel Cooper & Co. v. Trcka,* 218 Ill. 559; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242.

We think that an ordinarily and reasonably prudent employer would have foreseen that some such catastrophe would probably result from the negligence which is here established. At any rate that question was submitted to the jury under proper instructions. There is no serious error in the record and the judgment will be affirmed.

*Affirmed.*