# Illinois Official Reports

## Appellate Court

---

*Larsen v. Provena Hospitals*, 2015 IL App (4th) 140255

---

| | |
|---|---|
| Appellate Court Caption | L. ROYCE LARSEN, M.D., Plaintiff-Appellant, v. PROVENA HOSPITALS, d/b/a PROVENA UNITED SAMARITANS MEDICAL CENTER, Defendant-Appellee.–L. ROYCE LARSEN, M.D., Plaintiff-Appellee, v. PROVENA HOSPITALS, d/b/a PROVENA UNITED SAMARITANS MEDICAL CENTER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-14-0255, 4-14-0261 cons. |
| Filed | February 26, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In action arising from a staff physician's complaint alleging that defendant hospital declined to renew plaintiff's staff membership and clinical privileges in violation of the Whistleblower Act, the appellate court, in response to four questions certified by the trial court for interlocutory review pursuant to Illinois Supreme Court Rule 308(a), answered that a physician is required to plead actual or deliberate intention to harm his person to state a claim for willful and wanton misconduct under the Hospital Act and *Lo*, a physician does not state a claim for willful and wanton misconduct under the Hospital Act and *Lo* by pleading actual or deliberate intention to harm his professional reputation, a physician's claim for violation of the Whistleblower Act does not constitute a claim for civil damages subject to peer review immunity afforded by the Hospital Act, and the payment to a hospital under assignment from a Medicaid recipient, pursuant to the Social Security Act, is not funding by the state as defined by the Whistleblower Act. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 11-L-88; the Hon. Steven L. Garst, Judge, presiding. |

| | |
|---|---|
| Judgment | Certified questions answered; cause remanded. |

| | |
|---|---|
| Counsel on<br>Appeal | Michael K. Goldberg (argued), Robert A. Bauerschmidt, and Jenna E. Milaegar, all of Goldberg Law Group, LLC, of Chicago, for L. Royce Larsen. |
| | David B. Honig (argued) and Christopher C. Eades (argued), both of Hall, Render, Killian, Heath & Lyman, P.C., of Indianapolis, Indiana, for Provena Hospitals. |

| | |
|---|---|
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Knecht and Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1     In May 2011, defendant, Provena Hospitals, d/b/a Provena United Samaritans Medical Center (Provena), declined to renew the medical staff membership and clinical privileges of plaintiff, L. Royce Larsen, M.D. In July 2013, Larsen filed a four-count first amended complaint, alleging, in part, that Provena retaliated against him in violation of the Whistleblower Act (740 ILCS 174/1 to 40 (West 2010)). In addition to injunctive relief, Larsen sought damages as a result of Provena's "willful and wanton misconduct" in harming his medical practice and professional reputation.

¶ 2     In August 2013, Provena filed a motion to dismiss Larsen's complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). Provena alleged that because Larsen failed to sufficiently plead willful and wanton misconduct as defined by section 10.2 of the Hospital Licensing Act (Hospital Act) (210 ILCS 85/10.2 (West 2010))–a provision that provides Provena immunity against civil damages absent such misconduct–he failed to state a cause of action upon which the trial court could grant relief. Provena also urged the court to dismiss Larsen's retaliation claim, alleging that the protections afforded by the Whistleblower Act did not apply because Larsen failed to allege that Provena received state funding, which was required to invoke such protection.

¶ 3     Following a December 2013 hearing, the trial court partially granted Provena's motion to dismiss Larsen's complaint. Relying on *Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538, 826 N.E.2d 592 (2005), the court found that harm to a physician's medical practice and professional reputation was "not the type of harm required to state a claim for willful and wanton misconduct" under the Hospital Act. The court, however, denied Provena's motion to

dismiss Larsen's retaliation claim, finding, in pertinent part, that (1) the immunity provided by section 10.2 of the Hospital Act did not preclude that claim and (2) the Whistleblower Act applied because Provena received state funding in the form of Medicaid payments.

¶ 4    In May 2014, the trial court certified the following four questions for interlocutory review pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010):

"[1.] Is a doctor required to plead actual or deliberate intention to harm his person [to] state a claim for willful and wanton misconduct under the *** [Hospital Act] *** and *Lo*?

[2.] Alternatively, does a doctor state a claim for willful and wanton misconduct under the *** [Hospital Act] *** and *Lo* *** by pleading actual or deliberate intention to harm his professional reputation?

* * *

[3.] Does plaintiff's claim for violation of the *** Whistleblower [Act] constitute a claim for civil damages subject to peer review immunity afforded by the *** [Hospital Act]?

[4.] Is payment to a hospital under assignment from a Medicaid recipient, pursuant to the Social Security Act, § 1902(a)(32), 'funding' by the State as defined by the *** [Whistleblower Act]?"

¶ 5    We answer the first certified question in the affirmative, the remaining three certified questions in the negative, and remand for further proceedings.

¶ 6                                          I. BACKGROUND

¶ 7    The following facts were gleaned from the supporting record provided pursuant to Illinois Supreme Court Rule 328 (eff. Feb. 1, 1994).

¶ 8    In May 2011, Provena–specifically, the Provena Central Illinois Region Board–denied Larsen's application to renew his medical staff membership and clinical privileges, which Provena and its predecessors had renewed essentially biennially for the past 31 years.

¶ 9    In July 2013, Larsen filed a first amended complaint, alleging that Provena (1) violated the Whistleblower Act (count I); (2) tortiously interfered with his prospective business advantages (count II); (3) breached contractual medical-staff bylaws by neither providing a statement of charges nor conducting a hearing prior to the denial of Larsen's application (count III); and (4) violated his fundamental rights (count IV). With the exception of count I, Larsen claimed that Provena's denial was "willful and wanton" because it violated contractual bylaws and tarnished his unblemished reputation as a general surgeon and physician. In count I, Larsen claimed that Provena denied his application to renew his clinical privileges in retaliation for reports he made to government agencies that revealed Provena's violations of various state and federal laws. In his prayer for relief, Larsen sought (1) declaratory and injunctive relief; (2) economic, consequential, and punitive damages; and (3) attorney fees.

¶ 10   In August 2013, Provena filed a motion to dismiss Larsen's complaint under section 2-615 of the Code. Provena claimed that because Larsen did not sufficiently plead willful and wanton misconduct under section 10.2 of the Hospital Act, Larsen failed to state a cause of action upon which the trial court could grant relief. Provena also urged the court to dismiss Larsen's retaliation claim, asserting that because Larsen failed to allege that Provena received state funding, he was not a protected employee as defined by the Whistleblower Act.

¶ 11      In response, Larsen argued that because he alleged harm to his medical practice and professional reputation as a result of Provena's denial, which (he asserts) occurred without a hearing, in violation of the contractual medical-staff bylaws, he sufficiently pleaded willful and wanton misconduct as defined by section 10.2 of the Hospital Act. Larsen also averred that he sufficiently pleaded violations of the Whistleblower Act.

¶ 12      Following a December 2013 hearing, the trial court entered a March 19, 2014, order, dismissing counts II and IV of Larsen's first amended complaint. (At the December 2013 hearing, Provena informed the court that it was not seeking to dismiss Larsen's prayer for injunctive relief as to count III.) Relying on this court's decision in *Lo*, the trial court found that harm to a physician's medical practice and professional reputation "was not the type of harm required to state a claim for willful and wanton misconduct" under section 10.2 of the Hospital Act. The court, however, denied Provena's motion to dismiss Larsen's retaliation claim, finding, in pertinent part, that (1) the immunity provided by section 10.2 of the Hospital Act did not preclude that claim and (2) the Whistleblower Act applied because Provena received state funding in the form of Medicaid payments.

¶ 13      That same day, the trial court entered an order pursuant to Rule 308(a), finding the existence of substantial grounds for differences of opinion on questions of law and that an immediate appeal of its order may materially advance the termination of the litigation. The court *sua sponte* granted (1) Larsen leave to appeal the first two certified questions (case No. 4-14-0255) and (2) Provena leave to appeal the final two certified questions (case No. 4-14-0261). In April 2014, the parties timely filed their respective applications for leave to appeal pursuant to Illinois Supreme Court Rule 308(b) (eff. Feb. 26, 2010). Later that month, this court allowed both applications, and, on our own motion, we have consolidated these cases.

¶ 14                         II. ANALYSIS

¶ 15                     A. The Standard of Review

¶ 16      "The scope of review in an interlocutory appeal brought under Rule 308 is limited to the certified question." *Spears v. Association of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289, ¶ 15, 986 N.E.2d 216. A reviewing court should restrict its review to certified questions of law and decline to answer when the ultimate disposition depends upon resolution of factual predicates. *Id.* "With rare exceptions, we do not expand the question under review to answer other, unasked questions." *Giangiulio v. Ingalls Memorial Hospital*, 365 Ill. App. 3d 823, 829, 850 N.E.2d 249, 255 (2006). "A certified question pursuant to Rule 308 is reviewed *de novo*." *Spears*, 2013 IL App (4th) 120289, ¶ 15, 986 N.E.2d 216.

¶ 17                   B. Section 10.2 of the Hospital Act

¶ 18      Because a majority of the certified questions posed concern section 10.2 of the Hospital Act, we provide the language of that statutory provision, as follows:

> "Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a

- 4 -

result of the acts, omissions, decisions, or any other conduct, except those involving [willful] or wanton misconduct, of a *** credential committee, peer review committee, or any other committee or individual whose purpose, directly or indirectly, is *** for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline including institution of a summary suspension in accordance with Section 10.4 of this Act and the medical staff bylaws. *** *For the purposes of this Section, '[willful] and wanton misconduct' means a course of action that shows actual or deliberate intention to harm or that, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others.*" (Emphasis added.) 210 ILCS 85/10.2 (West 2010).

¶ 19                           C. The Certified Questions in Case No. 4-14-0255

¶ 20        The trial court certified the following two questions for interlocutory review:

> "[1.] Is a doctor required to plead actual or deliberate intention to harm his person [to] state a claim for willful and wanton misconduct under the *** [Hospital Act] *** and *Lo*?

> [2.] Alternatively, does a doctor state a claim for willful and wanton misconduct under the *** [Hospital Act] *** and *Lo* *** by pleading actual or deliberate intention to harm his professional reputation?"

¶ 21                           1. This Court's Decision in Lo

¶ 22        In *Lo*, 356 Ill. App. 3d at 538, 826 N.E.2d at 595, the plaintiff sued the defendant for breach of contract, alleging that the defendant involuntarily restricted his clinical privileges without a hearing, thereby violating the contractual agreement between the parties as provided by the medical-staff bylaws. The defendant later filed a motion to dismiss the plaintiff's suit under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2002)), claiming, in pertinent part, immunity from civil damages under section 10.2 of the Hospital Act. *Lo*, 356 Ill. App. 3d at 538-39, 826 N.E.2d at 595. The trial court later granted the defendant's motion to dismiss. *Id.* at 539, 826 N.E.2d at 595.

¶ 23        This court affirmed the trial court's judgment, noting that section 10.2 of the Hospital Act provided a statutory definition of the phrase "willful and wanton misconduct" that differed from the "ordinary definition" of "great carelessness or gross negligence." *Id.* at 544-45, 826 N.E.2d at 599-600. We continued our analysis, as follows:

> "In this case *** we are dealing not with the ordinary meaning of '[willful] and wanton misconduct' but with a statutory definition. 'In construing statutes the ordinary, usual[,] and commonly accepted definitions of the words employed therein are to be taken as the correct definitions of such words, *unless the statute gives special definitions to the contrary ***.*' (Emphasis added.) *Wahlman v. C. Becker Milling Co.*, 279 Ill. 612, 622, 117 N.E. 140, 144 (1917). Plaintiff has alleged no facts, and has offered no evidence, from which we could reasonably infer that defendant 'actual[ly] or deliberate[ly] inten[ded] to harm' him. See 210 ILCS 85/10.2 (West 2002). His 'own safety' was never at issue in this case. See 210 ILCS 85/10.2 (West 2002). Because plaintiff's cause of action does not fit within the specialized definition of '[willful] and

wanton misconduct' in section 10.2, the statute bars him from recovering damages for defendant's breach of contract." *Id*. at 545, 826 N.E.2d at 600.

¶ 24                    2. This Court's Response to the Certified Questions

¶ 25    Larsen argues that the trial court's interpretation of the phrase "willful and wanton misconduct" disregards the two-part definition contained within section 10.2 of the Hospital Act. Specifically, Larsen contends that `the court incorrectly conflated` "the issue of utter indifference or conscious disregard for 'a person's own safety or the safety of others' with the issue of actual or deliberate intention 'to harm,' making allegations of physical harm required *** to show willful and wanton misconduct under section 10.2" of the Hospital Act. Larsen then asserts that the first definition does not require a showing of a specific type of harm because "the 'actual' or 'deliberate' intent of the actor is the primary focus." We disagree.

¶ 26    "Our primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the surest most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself." *People v. Chapman*, 2012 IL 111896, ¶ 23, 965 N.E.2d 1119. When the statutory language is clear and unambiguous, this court will apply the statute without aid of statutory construction. *Id*. "In determining the plain meaning of the statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in passing it." *Id*.

¶ 27    The legislative objective of section 10.2 of the Hospital Act is to "foster effective self-policing by members of the medical profession in matters unique to that profession and to thereby promote the legitimate State interest in improving the quality of health care in Illinois." (Internal quotation marks omitted.) *Szczerbaniuk v. Memorial Hospital for McHenry County*, 180 Ill. App. 3d 706, 711, 536 N.E.2d 138, 142 (1989). In pursuit of that goal, section 10.2 places "limitation[s] on the remedies available to physicians aggrieved by a hospital's peer-review process." *Frigo v. Silver Cross Hospital & Medical Center*, 377 Ill. App. 3d 43, 68, 876 N.E.2d 697, 720 (2007). Specifically, section 10.2 grants immunity from "civil damages as a result of the acts, omissions, decisions, or any other conduct" of specific peer-review committees tasked with the goal of improving patient care. 210 ILCS 85/10.2 (West 2010). An exception to the immunity afforded occurs if the aggrieved physician can show that the peer-review committee at issue engaged in " '[willful] and wanton misconduct,' " defined as (1) "a course of action that shows actual or deliberate intention to harm" or (2) "if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others." *Id*.

¶ 28    Larsen essentially urges this court to construe the statutory definition of willful and wanton misconduct into two separate parts. Specifically, that the unintentional harm to a "person's own safety" is distinct from the intentional "harm," which Larsen claims encompasses a loss or diminution of professional reputation. We reject this construction. Instead, we construe section 10.2 of the Hospital Act in harmony with its clearly stated overarching purpose and conclude that the unintentional harm–that is, the "utter indifference to or conscious disregard for a person's own safety and the safety of others" *clarifies* the type of intentional "harm" the legislature contemplated. The parsing that Larsen advocates would render meaningless the immunity intended by section 10.2 of the Hospital Act given the following unavoidable consequences that flow from a credentialing committee's denial of a physician's application requesting renewal of clinical privileges.

¶ 29    A hospital credentialing committee is primarily tasked with determining whether approving a physician's hospital privileges for an additional term is in the best interest of the hospital and its patients. To perform this core function, a credentialing committee will inevitably deny some renewals for valid reasons. Such action cannot be viewed reasonably as an unintentional act. The committee members, many of whom may well be physicians themselves, are presumed to know and accept the consequences of such a denial for the physician whose privileges are not renewed. As Larsen stated in his July 2013 first amended complaint, the decision not to renew a physician's clinical privileges requires mandatory self-reporting to current and potential employers, providers, and insurers. Such reporting would–at a minimum–negatively impact the physician's professional reputation and future income. In other words, a credentialing committee's decision not to renew a physician's privileges necessarily involves reputational harm to that physician. Indeed, we cannot envision an instance where such a denial would not result in at least a modicum of such harm in the short term.

¶ 30    Notwithstanding the aforementioned negative consequences, a credentialing committee's decision not to renew a physician's hospital privileges is precisely the determination that section 10.2 of the Hospital Act protects. If we were to agree with Larsen that the phrase "actual or deliberate intention to harm" does not require a showing of a specific type of harm, the immunity afforded Provena and members of the Provena Central Illinois Region Board would cease immediately upon the denial of clinical privileges, given that such a determination, as we have described, would (1) be intentional and (2) undoubtedly result in some reputational harm to the aggrieved physician. Larsen's stance also conflicts with the clearly stated legislative intent of section 10.2 of the Hospital Act to facilitate the "candid and conscientious evaluation of clinical practices" to improve patient care by encouraging "peer review by health care providers." *Id.* Plainly put, if merely denying a physician hospital privileges could result in civil liability for the medical facility or members of a credentialing committee, candid reviews would likely cease.

¶ 31    Larsen asserts that under the trial court's interpretation of *Lo*, an aggrieved physician would be precluded from seeking civil damages under any set of facts unless the harm alleged was *physical* harm. Larsen's assertion is correct, but we reject his claim that the court incorrectly interpreted *Lo*. As previously noted, in *Lo*–a case substantially similar to the instant case–this court held that absent allegations of intentional *physical* harm or a showing that the committee at issue consciously disregarded the aggrieved physician's safety, the immunity afforded by that section remains intact. *Lo*, 356 Ill. App. 3d at 545, 826 N.E.2d at 600.

¶ 32    Essentially, Larsen's argument is premised on his belief that the legislature–in crafting the willful-and-wanton-misconduct exception–could not have intended that physical harm only would overcome the immunity otherwise provided, which would never occur as a result of a credentialing committee's decision to deny clinical privileges. This court, however, "will not depart from the plain language of a statute by reading into it exceptions, limitations[,] or conditions that conflict with the express legislative intent." *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507, 787 N.E.2d 127, 133-34 (2003). We find support for our conclusion in *Lo* in the legislature's silence since *Lo*'s publication.

¶ 33    In *Szczerbaniuk*, 180 Ill. App. 3d at 710-11, 536 N.E.2d at 141, the Second District concluded that a prior version of section 10.2 of the Hospital Act did not provide immunity for individuals "acting only pursuant to an informal delegation of authority by an uninformed

committee." As we noted in *Lo*, 356 Ill. App. 3d at 544, 826 N.E.2d at 599, shortly after the Second District decided *Szczerbaniuk*, the legislature amended section 10.2 of the Hospital Act by adding the words "or individual," which extended immunity to the acts or omissions of any individual tasked with internal quality control. See Pub. Act 91-448, § 5 (eff. Aug. 6, 1999). We also note that at the time the legislature amended section 10.2 of the Hospital Act to include the phrase "or individual," it further amended the statute by adding the definition of willful and wanton misconduct that is at issue in this case. *Id.*

¶ 34    In the almost 10 years since this court's decision in *Lo*, the legislature has not seen fit to further amend section 10.2 of the Hospital Act. The legislature's silence implies that–at a minimum–it is not displeased with our conclusion in *Lo* that an allegation of reputational harm does not "fit within the specialized definition of '[willful] and wanton misconduct' in section 10.2 [of the Hospital Act]." *Lo*, 356 Ill. App. 3d at 545, 826 N.E.2d at 600. Given that the medical profession is well-represented and influential within the legislative halls of the General Assembly, we would expect that if our interpretation in *Lo* of section 10.2 of the Hospital Act were erroneous, as Larsen contends, legislative action to correct that misinterpretation would have been forthcoming, just as the legislature acted after *Szczerbaniuk*. See *Provena Health v. Illinois Health Facilities Planning Board*, 382 Ill. App. 3d 34, 45, 886 N.E.2d 1054, 1065 (2008) ("The legislature is presumed to know how courts have interpreted a statute and may amend the statute if it intended a different construction.").

¶ 35    Accordingly, we adhere to our decision in *Lo* and answer the second certified question in the negative. That answer requires our answer to the first certified question to be in the affirmative.

¶ 36                    D. The Certified Questions in Case No. 4-14-0261
¶ 37                            1. *This Court's Scope of Review*
¶ 38    Prior to considering the third and fourth certified questions presented in case No. 4-14-0261, we first explain our scope of review.

¶ 39    Citing *Bright v. Dicke*, 166 Ill. 2d 204, 208, 652 N.E.2d 275, 277 (1995), Provena contends that "this [c]ourt is not strictly limited by the scope of the questions certified for review" and "may consider the propriety of an underlying decision in the 'interests of judicial economy and the need to reach an equitable result.' " Relying on its interpretation of *Bright*, Provena then disregards the actual question for review certified by the trial court and purports to then present the following two *issues* for our review, as follows:

> "I. Whether the trial court erred by denying [Provena's section] 2-615 motion to dismiss *** Larsen's allegations of reputational harm because [the court] found that the *** [Hospital Act's] immunity provision did not apply to claims brought under the *** Whistleblower Act.
>
> II. Whether the trial court erred by denying [Provena's section] 2-615 motion to dismiss because it found that [Provena's] acceptance of payments from Medicare patients makes it a state-funded hospital, subject to the *** Whistleblower Act."

Contrary to Provena's claim, *Bright* does not permit Provena to disregard the questions certified by the court and instead rewrite those questions as it sees fit. At most, *Bright* stands for the proposition that *after* answering those questions, this court may go beyond the certified

questions presented and consider the propriety of the trial court's underlying order. *Bright* does not authorize either ignoring or altering the certified questions.

¶ 40    Accordingly, we will consider the certified questions *as presented*. If–after considering each certified question–the "interest of judicial economy and the need to reach an equitable result" so warrant, we will consider the propriety of the trial court's underlying order.

¶ 41                  2. *The Pertinent Portions of the Whistleblower Act*

¶ 42    Section 15(b) of the Whistleblower Act outlines the following prohibited activity:

> "(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b) (West 2010).

¶ 43    Section 5 of the Whistleblower Act defines employee, as follows:

> " 'Employee' means any individual who is employed on a full-time, part-time, or contractual basis by an employer. 'Employee' also includes, but is not limited to, a licensed physician who practices his or her profession, in whole or in part, at a hospital, nursing home, clinic, or any medical facility that is a health care facility funded, in whole or in part, by the State." 740 ILCS 174/5 (West 2010).

¶ 44    Section 30 of the Whistleblower Act, entitled, "Damages," outlines the following remedies available to an aggrieved employee:

> "If an employer takes any action against an employee in violation of Section 15 ***, the employee may bring a civil action against the employer for all relief necessary to make the employee whole ***." 740 ILCS 174/30 (West 2010).

Section 30 continues by outlining specific remedies available to an aggrieved employee, which include, but are not limited to, (1) "reinstatement with the same seniority status"; (2) "back pay, with interest"; and (3) "compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees." *Id.*

¶ 45                       3. *The Third Certified Question*

¶ 46    The trial court certified the following question for interlocutory review:

> "[3.] Does plaintiff's claim for violation of the *** Whistleblower [Act] constitute a claim for civil damages subject to peer review immunity afforded by the *** [Hospital Act]?"

¶ 47    As phrased, the third certified question requires this court to consider the interaction, if any, between the Hospital Act and the Whistleblower Act. As already discussed, the intent of section 10.2 of the Hospital Act is to provide immunity from civil liability to hospitals and certain identified committee members for decisions made in furtherance of the legitimate state interest in improving the quality of health care in Illinois. In contrast, the purpose of the Whistleblower Act is to protect statutorily defined employees who report violations of state or federal laws, rules, or regulations "because the reported wrongful conduct or unsafe condition affected the heath, safety[,] or welfare of Illinois residents as a whole." *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 627, 826 N.E.2d 1021, 1027 (2005).

¶ 48        Provena argues that Larsen's retaliation claim is barred by section 10.2 of the Hospital Act. Specifically, Provena contends that because Larsen based his retaliation claim on Provena's peer-review determination, which denied Larsen's application for clinical privileges, Larsen was required to allege willful and wanton misconduct to maintain his cause of action under the Whistleblower Act. Provena asserts that to conclude otherwise would essentially create an additional exception to the immunity afforded by section 10.2 of the Hospital Act. We disagree.

¶ 49        In January 2004–approximately 4 1/2 years after amending section 10.2 of the Hospital Act to include a definition of willful and wanton misconduct–the legislature enacted the Whistleblower Act. See Pub. Act 93-544 (eff. Jan. 1, 2004) (adding 740 ILCS 174/1 to 35). Section 5 of the Whistleblower Act specifically notes that a physician who practices his or her profession in a health care facility funded by the state is an "employee" who "may bring a civil action against the employer for *all relief necessary to make the employee whole*." (Emphasis added.) 740 ILCS 174/5, 30 (West 2010). Thus, by its plain language, the legislature clearly intended that the Whistleblower Act would apply to physicians who satisfied the statutory definition of employee. We presume that when enacting new legislation, the legislature "envisions a consistent body of law" and "is aware of all previous enactments." *Illinois Native American Bar Ass'n v. University of Illinois*, 368 Ill. App. 3d 321, 327-28, 856 N.E.2d 460, 467 (2006). Given their differing purposes and the legislature's clear expression that the Whistleblower Act would apply to physician employees as defined therein, we conclude the Whistleblower Act and Hospital Act are separate and distinct laws.

¶ 50        The Whistleblower Act contains no immunity provision, as does the Hospital Act, and this court, under the guise of statutory interpretation, cannot simply rewrite the Whistleblower Act to include such a provision. Our doing so would be particularly improper where the very immunity provision at issue was subject to legislative scrutiny just 4 1/2 years earlier, when the legislature amended the immunity provision of the Hospital Act. This sequence of events compels the conclusion that the absence of this immunity provision in the Whistleblower Act is no legislative oversight.

¶ 51        We acknowledge that the relief available to an employee under section 30 of the Whistleblower Act includes damages that would not be recoverable under the Hospital Act absent willful and wanton misconduct. However, in any supposed conflict between the two respective acts as a result of a retaliatory claim based on a denial of clinical privileges, the older act must yield to the more recent legislation. See *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 431, 837 N.E.2d 29, 46 (2005) ("[W]hen two statutes appear to be in conflict, the one which was enacted later should prevail, as a later expression of legislative intent.").

¶ 52        Accordingly, we answer the third certified question in the negative.

¶ 53                              4. *The Fourth Certified Question*

¶ 54        Having concluded that Larsen's retaliation claim was not precluded by the Hospital Act, we consider the next and last certified question, which concerns Larsen's status as an employee under the Whistleblower Act:

"[4.] Is payment to a hospital under assignment from a Medicaid recipient, pursuant to the Social Security Act, § 1902(a)(32), 'funding' by the State as defined by the *** [Whistleblower Act]?"

¶ 55    As previously noted, section 5 of the Whistleblower Act defines employee, as follows:

" 'Employee' means any individual who is employed on a full-time, part-time, or contractual basis by an employer. 'Employee' also includes, but is not limited to, a licensed physician who practices his or her profession, in whole or in part, at a hospital, nursing home, clinic, or any medical facility that is *a health care facility funded, in whole or in part, by the State*." (Emphasis added.) 740 ILCS 174/5 (West 2010).

Thus, the fourth certified question requires this court to interpret the phrase, "a health care facility funded, in whole or in part, by the State."

¶ 56    Section 1396a(a)(32)(A) of the Social Security Act provides, as follows:

"(a) Contents.

A State plan for medical assistance must–

* * *

(32) provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise; except that–

(A) in the case of any care or service provided by a physician, dentist, or other individual practitioner, such payment may be made (i) to the employer of such physician, dentist, or other practitioner if such physician, dentist, or practitioner is required as a condition of his employment to turn over his fee for such care or service to his employer, or (ii) (where the care or service was provided in a hospital, clinic, or other facility) to the facility in which the care or service was provided if there is a contractual arrangement between such physician, dentist, or practitioner and such facility under which such facility submits the bill for such care or service[.]" 42 U.S.C. § 1396a(a)(32)(A) (2006).

¶ 57    "In 1965, Congress enacted title XIX of the Social Security Act (42 U.S.C. §§ 1396 to 1396v (2006)), commonly known as the Medicaid Act." *Tjaden v. State of Illinois*, 2013 IL App (4th) 120768, ¶ 34, 11 N.E.3d 812. "The statute created a cooperative program in which the federal government reimburses state governments for a portion of the costs to provide medical assistance to two low-income groups known as 'the categorically needy' and 'the medically needy.' " *Id*. "State participation in the Medicaid program is voluntary, but if a state elects to participate, it must comply with the requirements of the Medicaid Act and the regulations promulgated thereunder." *Biekert v. Maram*, 388 Ill. App. 3d 1114, 1119, 905 N.E.2d 357, 362-63 (2009). "At its heart, Medicaid is a taxpayer-funded program intended to provide medical care to the truly poor and needy ***." *Tjaden*, 2013 IL App (4th) 120768, ¶ 35, 11 N.E.3d 812.

¶ 58    Provena essentially argues that Medicaid benefits are not state funds as contemplated by section 30 of the Whistleblower Act. In their respective briefs to this court, the parties argue that resolution of the fourth certified question depends on the manner in which Provena received Medicaid payments–that is, directly from the state or by assignment from the

Medicaid beneficiary. We do not find this distinction dispositive. Instead, we compare the terms "fund," as used in section 5 of the Whistleblower Act, and "payment," as used in the Social Security Act. We find this distinction dispositive.

¶ 59 The definition of "fund" is "[t]o furnish money to (an individual, entity, or venture), [especially] to finance a particular project." Black's Law Dictionary 697 (8th ed. 2004). "Payment" is defined as the "money or other valuable thing so delivered in satisfaction of an obligation." *Id.* at 1165.

¶ 60 As noted, the purpose of the Medicaid program is to defray the cost of providing medical care to the poor and needy by providing *payment* in satisfaction or partial satisfaction for the medical services provided. Payments such as these cannot reasonably be considered funding as contemplated by the Whistleblower Act. For example, if a person underwent a medical procedure that was covered by her private medical insurance policy, no reasonable person would conclude that the insurance company was privately "funding" the hospital by directly or indirectly tendering payment for the medical service provided. Similarly, a person who pays for his prescription at the hospital's pharmacy is not "funding" that entity. In each example, the payee is making a *payment in satisfaction for a service performed*. In other words, payment contemplates an exchange. In this case, a Medicaid payment is for medical services rendered. We see no meaningful distinction between the aforementioned examples and a payment made by the state on behalf of a Medicaid beneficiary for medical services rendered.

¶ 61 In contrast, we view the phrase, "funding, in whole or in part, by the State" as used in section 5 of the Whistleblower Act as a term of art, which contemplates public funding that is allocated–for example–to financially support a particular program, experimental medical trial, or project offered by a health care facility. See 105 ILCS 5/14A-30 (West 2010) (explaining the *funding* available through the Illinois Board of Education for qualified programs focused on the education of gifted and talented children). In the examples provided, the funds allocated do not represent a direct exchange but, rather, finances provided to advance a project, program, or other laudable endeavor that the state has determined is in the public's best interest.

¶ 62 Accordingly, we answer the fourth certified question in the negative, noting that a Medicaid payment–made either directly by the state or by assignment by a Medicaid beneficiary–is not funding as contemplated by section 5 of the Whistleblower Act.

¶ 63 III. CONCLUSION

¶ 64 For the reasons stated, we answer the first certified question in the affirmative, the remaining three questions in the negative, and we remand for further proceedings.

¶ 65 Certified questions answered; cause remanded.