# Illinois Official Reports

## Appellate Court

*Valfer v. Evanston Northwestern Healthcare*, 2015 IL App (1st) 142284

| | |
|---|---|
| Appellate Court Caption | STEVEN I. VALFER, M.D. and HIGHLAND PARK, OB-GYN ASSOCIATES, LTD., Plaintiffs-Appellants, v. EVANSTON NORTHWESTERN HEALTHCARE, n/k/a NORTHSHORE UNIVERSITY HEALTH SYSTEM, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-2284 |
| Filed | April 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-3933; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., of Chicago, for appellant Steven I. Valfer.<br><br>David E. Dahlquist, J. Ethan McComb, Christopher J. Letkewicz, and Laura B. Greenspan, all of Winston & Strawn LLP, of Chicago, for appellee. |
| Panel | JUSTICE HOWSE delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Evanston Northwestern Healthcare, n/k/a Northshore University Health System (ENH), conducted peer review under the Illinois Hospital Licensing Act (the Act) (210 ILCS 85/1 *et seq.* (West 2012)), relating to the conduct of plaintiff Steven I. Valfer, M.D., and revoked his privileges to practice at ENH. Valfer subsequently sought civil damages against ENH. ENH filed a motion for summary judgment arguing it was immune from damages under the Act, and the trial court granted ENH's motion. Dr. Valfer now appeals the trial court's ruling on summary judgment. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    Dr. Valfer is an obstetrician and a gynecologist (OB-GYN). He has been licensed to practice medicine in Illinois since 1975.

¶ 4    In November 2000 and September 2001, Dr. Valfer was reappointed to the ENH staff. With respect to the September 2001 reappointment, Dr. Valfer received a letter from the president of ENH hospitals and clinics stating that his reappointment would end on May 31, 2002.

¶ 5    In February 2002, Dr. Valfer applied for reappointment at ENH. Also in February 2002, Dr. Nelson, the division chief of gynecology, reviewed one of Dr. Valfer's gynecological surgeries and deemed that it did not meet relevant criteria. This prompted an additional review of surgeries performed by Dr. Valfer during the preceding 12 months.

¶ 6    On May 6, 2002, Dr. Nelson prepared a memorandum regarding concerns he had with several laparoscopic cases Dr. Valfer had performed. Dr. Silver, chairman of the OB-GYN department, received a copy of this memorandum.

¶ 7    On June 4, 2002, Dr. Nelson and Dr. Silver met with Dr. Valfer to discuss their findings that at least 50% of Dr. Valfer's surgical cases reviewed lacked demonstrable indications for surgical intervention. Following this discussion, Dr. Valfer voluntarily agreed to refrain from performing gynecological surgery until the pending issues were resolved. Dr. Valfer retained all other privileges. Accordingly, Dr. Silver notified the ENH operating room that day that Dr. Valfer's operating privileges were suspended until further notice. Also on June 4, 2002, Dr. Silver sent Dr. Valfer a letter stating that he would not recommend Dr. Valfer for reappointment at ENH. Dr. Silver explained that his recommendation was based on patient safety and specifically the fact that "[m]ultiple surgical cases for which approved indication for the intended procedures appear to be lacking." The letter also explained that if the executive committee accepted Dr. Silver's recommendation for nonreappointment, Dr. Valfer would be notified in writing.

¶ 8    On July 3, 2002, ENH's executive committee met to discuss Dr. Valfer and its position on his reappointment to the medical staff. The executive committee determined that it would recommend to the ENH Board of Directors that Dr. Valfer not be reappointed.

¶ 9    On July 9, 2002, the President and Chief Executive Officer of ENH sent Dr. Valfer a certified letter advising him that the professional staff had accepted a recommendation not to reappoint him to the ENH staff. The letter set forth the reasons for the decision and explained Dr. Valfer's rights for a hearing.

¶ 10 In 2004, ENH held an *ad hoc* hearing regarding Dr. Valfer's privileges. At the hearing, Dr. Nelson and Dr. Hansfield testified against Dr. Valfer. The record contains evidence that Dr. Nelson and Dr. Hansfield were competitors of Dr. Valfer, both having offices in close proximity to Dr. Valfer's office. On July 21, 2004, the *ad hoc* committee upheld the executive committee's recommendation for nonreappointment.

¶ 11 On November 19, 2004, Dr. Valfer appealed the *ad hoc* committee's recommendation. The appellate review committee upheld the *ad hoc* committee's decision, and the board affirmed that decision. The decision not to reappoint Dr. Valfer became final and effective on March 16, 2005.

¶ 12 As we noted above, Dr. Valfer applied for reappointment in February 2002. From the time of his application for reappointment until the time his nonreappointment was final on March 16, 2005, ENH's computer credentialing software at times indicated that Dr. Valfer was an active staff member at ENH. Any changes in computer credentialing software had to go through the medical executive committee. On October 4, 2002, in response to a request for information from Rush North Shore Medical System, ENH's professional staff's office sent a letter stating that Dr. Valfer was a member in good standing; a similar letter was sent again on March 9, 2004. Between May 31, 2002, the day Dr. Valfer's privileges at ENH were set to expire, and March 16, 2005, the day Dr. Valfer's nonreappointment became final, Dr. Valfer admitted numerous patients at ENH.

¶ 13 On March 15, 2007, Dr. Valfer filed his initial lawsuit against ENH seeking civil damages arising out of ENH's decision not to reappoint him. In February 2014, ENH filed a motion for summary judgment seeking to dismiss Dr. Valfer's remaining breach of contract claim. In the motion, ENH argued that it had complied with all the bylaws in deciding not to reappoint Dr. Valfer and, therefore, it could not be liable for breach of contract. The motion further argued that ENH was immune from civil liability pursuant to the Act and also immune pursuant to the Health Care Quality Improvement Act (HCQIA) (42 U.S.C. § 11101 (2012)). The trial court judge granted summary judgment in favor of ENH on all three grounds.

¶ 14 Dr. Valfer now appeals the trial court's ruling granting summary judgment in favor of ENH. Dr. Valfer argues that the trial court erred because: (1) he was "effectively reappointed" on May 31, 2002 because he was allowed to admit numerous patients to the hospital after that date and, as a result, there is a genuine issue of fact as to whether the reappointment bylaws or the peer review and suspension bylaws applied in this case; (2) immunity under the Act does not apply in his case because ENH was "willful and wanton" in denying him privileges at ENH by failing to follow the appropriate bylaws and by allowing two of his competitors to partake in the peer review process; and (3) immunity under the HCQIA, which Dr. Valfer argues is limited to peer review, does not apply in his case because ENH only argued that it abided by the reappointment bylaws. In response, ENH argues that the trial court's ruling was proper because: (1) ENH followed all applicable reappointment bylaws and, therefore, could not be liable for breach of contract damages; (2) immunity under the Act applies because Dr. Valfer did not allege or prove any physical harm to himself as a result of ENH's decision not to reappoint him; and (3) immunity under the HCQIA applied because ENH met all four requirements for immunity under that statute. For the reasons that follow, we affirm the trial court's ruling granting summary judgment in favor of ENH.

¶ 16        In this appeal, Dr. Valfer challenges the trial court's ruling granting summary judgment in favor of ENH. Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). Although summary judgment is appropriate if a plaintiff cannot establish an element of his claim, it should only be granted when the right of the moving party is clear and free from doubt. *Dardeen v. Kuehling*, 213 Ill. 2d 329, 335 (2004). Our review of a ruling on a motion for summary judgment is *de novo*. *Id.*

¶ 17        Here, the trial court granted summary judgment in favor of ENH because it found there were no genuine issues of material facts and ENH was entitled to judgment as a matter of law because ENH was immune from civil liability under the Act and the HCQIA. Dr. Valfer argues on appeal that the court erred in granting summary judgment in favor of ENH.

¶ 18        We will begin by addressing the court's ruling that ENH was immune under the Act. Under the Act, healthcare providers engaging in peer review, including individuals who are members, agents, or employees of hospitals, hospital medical staff, hospital administrative staff, or the hospital governing board, are immune from civil damages for their acts, omissions, decisions, or any other conduct, except those involving willful or wanton misconduct. 210 ILCS 85/10.2 (West 2012). Dr. Valfer argues that the immunity provided in section 10.2 of the Act does not apply here because a jury could find that ENH's failure to follow its bylaws was "willful and wanton in that it showed a deliberate intention to harm Dr. Valfer's livelihood." He also argues that Dr. Nelson's and Dr. Hansfield's involvement in evaluating his practice supports his allegation of willful and wanton conduct because both doctors were his direct competitors.

¶ 19        ENH, in turn, argues that immunity applies because: (1) ENH could not have been willful and wanton where it followed its bylaws, and (2) even if a jury did find that ENH breached its contract with Dr. Valfer by not following the bylaws, ENH is still immune from civil damages because the Act provides its own statutory definition of willful and wanton misconduct, which defines willful and wanton misconduct as conduct that causes physical harm to an individual, and Dr. Valfer admittedly failed to allege or show any type of physical harm to him.

¶ 20        To help in our analysis, we set forth the language of section 10.2 of the Act below, which contains the relevant immunity provisions as well as the statutory definition of willful and wanton misconduct:

> "Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct, except those involving wilful or wanton misconduct, of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee or individual whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether

within a hospital or not, or for the purpose of professional discipline including institution of a summary suspension in accordance with Section 10.4 of this Act and the medical staff bylaws. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient. Any individual or hospital from liability arising from treatment of a patient. *For the purposes of this Section, 'wilful and wanton misconduct' means a course of action that shows actual or deliberate intention to harm or that, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others*." (Emphasis added.) 210 ILCS 85/10.2 (West 2012).

¶ 21 Our determination of whether immunity under the Act applies in this case depends on the meaning of "willful and wanton" as defined in section 10.2 of the Act, and whether that definition requires a plaintiff to allege physical harm. See 210 ILCS 85/10.2 (West 2012). "Our primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the surest and most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself." *People v. Chapman*, 2012 IL 111896, ¶ 23. When the statutory language is clear and unambiguous, this court will apply the statute without aid of statutory construction. *Id.*

¶ 22 The terms in a statute are not to be considered in a vacuum, but must be construed in the context of what they define. *People v. Frieberg*, 147 Ill. 2d 326, 348 (1992); *M.I.G. Investments, Inc. v. Environmental Protection Agency*, 122 Ill. 2d 392, 400 (1988). As a general rule, courts should avoid interpretations that treat language as surplusage and should instead attempt to give meaning to all of the words used. *Bethania Ass'n v. Jackson*, 262 Ill. App. 3d 773, 777 (1994).

¶ 23 The stated purpose of section 10.2 of the Act is "to encourage peer review by health care providers." 210 ILCS 85/10.2 (West 2012). The legislative objective of section 10.2 is " 'to foster effective self-policing by members of the medical profession in matters unique to that profession and to thereby promote the legitimate State interest in improving the quality of health care in Illinois.' " *Knapp v. Palos Community Hospital*, 176 Ill. App. 3d 1012, 1024 (1988) (quoting *Rodriguez-Erdman v. Ravenswood Hospital Medical Center*, 163 Ill. App. 3d 464, 470 (1987)). The last clause of section 10.2, which defines willful and wanton conduct, was added into the Act in 1999. Since then, only a handful of cases have discussed and/or interpreted that provision.

¶ 24 In *Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538 (2005), the plaintiff sued the defendant for breach of contract, alleging that the defendant involuntarily restricted his clinical privileges without a hearing, thereby violating the contractual agreement between the parties as provided by the medical-staff bylaws. *Lo*, 356 Ill. App. 3d at 538. The defendant later filed a motion to dismiss the plaintiff's suit under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2002)), claiming, in pertinent part, immunity from civil damages under section 10.2 of the Act. *Lo*, 356 Ill. App. 3d at 538-39. The trial court later granted the defendant's motion to dismiss. *Id.* at 539.

¶ 25 The Fourth District Appellate Court affirmed the trial court's judgment, noting that section 10.2 of the Act provided a statutory definition of the phrase "willful and wanton misconduct" that differed from the "ordinary definition" of "great carelessness or gross negligence." *Id.* at 544-45. The court went on to hold:

"In this case, however, we are dealing not with the ordinary meaning of 'wilful and wanton misconduct' but with a statutory definition. 'In construing statutes the ordinary, usual[,] and commonly accepted definitions of the words employed therein are to be taken as the correct definitions of such words, *unless the statute gives special definitions to the contrary ***.*' (Emphasis added.) *Wahlman v. C. Becker Milling Co*., 279 Ill. 612, 622, 117 N.E. 140, 144 (1917). Plaintiff has alleged no facts, and has offered no evidence, from which we could reasonably infer that defendant 'actual[ly] or deliberate[ly] inten[ded] to harm' him. 210 ILCS 85/10.2 (West 2002). His 'own safety' was never at issue in this case. See 210 ILCS 85/10.2 (West 2002). Because plaintiff's cause of action does not fit within the specialized definition of 'wilful and wanton misconduct' in section 10.2, the statute bars him from recovering damages for defendant's breach of contract." *Id*. at 545.

¶ 26    In *Larsen v. Provena Hospitals*, 2015 IL App (4th) 140255,[1] the Fourth District Appellate Court, being asked to decide certified questions on interlocutory appeal, found that: (1) a doctor is required to plead actual or deliberate intention to harm his person in order to state a claim for willful and wanton misconduct under the Act, and (2) a doctor cannot state a claim for willful and wanton misconduct under the Act and *Lo* by pleading harm to his or her professional reputation. *Larsen*, 2015 IL App (4th) 140255, ¶¶ 20, 35. In coming to these conclusions, the Fourth District discussed its ruling in *Lo* and then explained:

"A hospital credentialing committee is primarily tasked with determining whether approving a physician's hospital privileges for an additional term is in the best interest of the hospital and its patients. To perform this core function, a credentialing committee will inevitably deny some renewals for valid reasons. Such action cannot be viewed reasonably as an unintentional act. The committee members, many of whom may well be physicians themselves, are presumed to know and accept the consequences of such a denial for the physician whose privileges are not renewed. As Larsen stated in his July 2013 first amended complaint, the decision not to renew a physician's clinical privileges requires mandatory self-reporting to current and potential employers, providers, and insurers. Such reporting would–at a minimum–negatively impact the physician's professional reputation and future income. In other words, a credentialing committee's decision not to renew a physician's privileges necessarily involves reputational harm to that physician. Indeed, we cannot envision an instance where such a denial would not result in at least a modicum of such harm in the short term.

Notwithstanding the aforementioned negative consequences, a credentialing committee's decision not to renew a physician's hospital privileges is precisely the determination that section 10.2 of the Hospital Act protects. If we were to agree with Larsen that the phrase 'actual or deliberate intention to harm' does not require a showing of a specific type of harm, the immunity afforded Provena and members of the Provena Central Illinois Region Board would cease immediately upon the denial of clinical privileges, given that such a determination, as we have described, would (1) be intentional and (2) undoubtedly result in some reputational harm to the aggrieved

---

[1]We realize *Larsen* is not final at this time and that the record indicates that the appellant in *Larsen* plans to appeal. Nevertheless, a discussion of the analysis in *Larsen* is relevant here.

physician. Larsen's stance also conflicts with the clearly stated legislative intent of section 10.2 of the Hospital Act to facilitate the 'candid and conscientious evaluation of clinical practices' to improve patient care by encouraging 'peer review by health care providers.' *Id.* Plainly put, if merely denying a physician hospital privileges could result in civil liability for the medical facility or members of a credentialing committee, candid reviews would likely cease." *Id.* ¶¶ 29-30.

¶ 27 We find the reasoning of the Fourth District Appellate Court compelling and likewise find that a plaintiff must plead and prove some type of harm to a person's safety and the safety of others, *i.e.*, physical harm, in order to claim civil damages arising out of an act or omission of a medical peer review board. In our agreement with the Fourth District's analysis in *Lo* and *Larsen*, we note several points as they relate to this case. First, we emphasize that the purpose of the Act is to "encourage peer review by health care providers." 210 ILCS 85/10.2 (West 2012). Limiting civil liability will certainly encourage peer review.

¶ 28 Second, while Dr. Valfer would like us to read section 10.2 of the Act as defining willful and wanton in two manners—one where the defendant engages in a course of action that shows actual or deliberate intention to harm and one where the defendant shows an utter indifference to or conscious disregard for a person's own safety and the safety of others—such a reading would render the immunity provided in section 10.2 meaningless and would defeat the purpose of the Act. This is because when a decision is made to deny a physician privileges, this can only be defined as an intentional act. When a physician's privileges are suspended, a known collateral damage is damage to the physician's reputation and/or economic damages. As such, under Dr. Valfer's interpretation, every time a physician's privileges are suspended,[2] he or she could sue for civil damages. If a physician could sue for civil damages every time he or she lost privileges, the immunity in section 10.2 would be meaningless and medical peer review would be discouraged for fear of lawsuits seeking money damages. *Larsen*, 2015 IL App (4th) 140255, ¶ 28 (interpreting section 10.2 of the Act as allowing two separate types of willful and wanton conduct would "render meaningless the immunity intended by section 10.2 of the Hospital Act given the following unavoidable consequences that flow from a credentialing committee's denial of a physician's application requesting renewal of clinical privileges"). In addition, the statute is silent about a motive as it only speaks to whether the act was intentional or not. See 210 ILCS 85/10.2 (West 2012). "We will not read words or meanings into a statute when the legislature has chosen not to include them." *People v. Johnson*, 2013 IL 114639, ¶ 12.

¶ 29 Thus, given that an interpretation of section 10.2 of the Act that allows civil damages where a plaintiff can show either (1) a course of action that shows actual or deliberate intention to harm or (2) an utter indifference to or conscious disregard for a person's own safety and the safety of others, would render any immunity in section 10.2 meaningless and would defeat the very purpose of the Act, the only logical way to interpret the last sentence in section 10.2 defining willful and wanton misconduct is by finding that the phrase " 'utter indifference to or conscious disregard for a person's own safety and the safety of others' *clarifies* the type of intentional 'harm' the legislature contemplated." (Emphasis in original.) *Larsen*, 2015 IL App (4th) 140255, ¶ 28 (quoting 210 ILCS 85/10.2 (West 2010) (" 'wilful and wanton misconduct'

[2]Or any other adverse action is taken against a physician's privileges as a result of a peer-review decision.

means a course of action that shows actual or deliberate intention to harm or that, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others")). This interpretation is not only in line with the stated purpose of the Act, as it encourages peer review by shielding potential civil liability, but it gives effect to *all* the language in section 10.2 of the Act. *Bethania Ass'n*, 262 Ill. App. 3d at 777 (as a general rule, courts should avoid interpretations that treat language as surplusage and should instead attempt to give meaning to all of the words used).

¶ 30      In Dr. Valfer's response to ENH's request for leave to cite to additional authority, Dr. Valfer argues that, during a Senate hearing, Senator Hawkinson confirmed that the definition of willful and wanton as stated in the Act would be the "standard definition." 91st Ill. Gen. Assem., Senate Proceedings, May 12, 1999, at 14 (statements of Senator Hawkinson). However, this is illogical given that the definition of "willful and wanton" given in section 10.2 of the Act *is* clearly different from the "ordinary definition"—"great carelessness or gross negligence." *Lo*, 356 Ill. App. 3d at 544. Further, it has repeatedly been recognized that the standard definition of a term only applies where the statute does not state otherwise. *Champaign Township v. County of Champaign*, 331 Ill. App. 3d 582, 587 (2002) (" 'In construing statutes[,] the ordinary, usual[,] and commonly accepted definitions of the words employed therein are to be taken as the correct definitions of such words, unless the statute gives special definitions to the contrary ***.' " (quoting *Wahlman v. C. Becker Milling Co*., 279 Ill. 612, 622 (1917))). Here, section 10.2 of the Act clearly defines "willful and wanton" in a manner that differs from the standard definition. As such, we find Dr. Valfer's argument relating to Senator Hawkinson's comments at a Senate hearing to be without weight.

¶ 31      We are aware that in interpreting section 10.2 of the Act, the federal district court made the following comments:

> "The Fourth District has essentially interpreted the definition of 'wilful and wanton misconduct' to include such conduct that threatens the plaintiff's physical well being. However, some confusion still exists in the interpretation of the phrase 'actual or deliberate indifference to harm' in section 10.2. It is unclear if the Illinois Supreme Court would adopt such a rigid standard of the meaning of 'willful and wanton misconduct' as statutorily defined in the IHLA. The Tort Immunity Act allows such damages that stem from injuries to reputation." *Mullapudi v. Mercy Hospital & Medical Center*, No. 07 C 2053, 2007 WL 4548293, at *8 (N.D. Ill. Dec. 17, 2007).

The Local Governmental and Governmental Employees Tort Immunity Act, however, defines "injury" as "death, injury to a person, or damage to or loss of property. It includes any other injury that a person may suffer to his person, reputation, character or estate which does not result from circumstances in which a privilege is otherwise conferred by law and which is of such a nature that it would be actionable if inflicted by a private person." 745 ILCS 10/1-204 (West 2012). There is no such definition in the Act.

¶ 32      Here, Dr. Valfer admittedly did not allege any harm to his safety and the safety of others, *i.e.*, physical harm, and, as such, ENH is immune from any civil damages arising out of his claims pursuant to section 10.2 of the Act. See 210 ILCS 85/10.2 (West 2012).

¶ 33      In his complaint, Dr. Valfer seeks only civil damages and does not seek any other remedy. Section 10.2 of the Act does not bar other potential remedies such as injunctive relief. 210 ILCS 85/10.2 (West 2012). Given our finding that ENH is immune under the Act from the civil damages alleged by Dr. Valfer, we do not find it necessary to address the remaining bases upon

which the trial court judge granted summary judgment in favor of ENH.

¶ 34                                    CONCLUSION

¶ 35        For the reasons stated about, we affirm the trial court's grant of summary judgment in favor of ENH.

¶ 36        Affirmed.