# Illinois Official Reports

## Supreme Court

---

**Valfer v. Evanston Northwestern Healthcare, 2016 IL 119220**

---

| | |
|---|---|
| Caption in Supreme Court: | STEVEN I. VALFER, M.D., Appellant, v. EVANSTON NORTHWESTERN HEALTHCARE, n/k/a NorthShore University HealthSystem, Appellee. |
| Docket No. | 119220 |
| Filed | May 19, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leslie J. Rosen, of Chicago, for appellant. |
| | David E. Dahlquist, Matthew R. Carter, J. Ethan McComb, Christopher J. Letkewicz and Laura B. Greenspan, of Winston & Strawn LLP, of Chicago, for appellee. |
| | David R. Nordwall, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |
| | Zachary M. Bravos and Kathleen M. DiCola, of Bravos & DiCola, of Wheaton, for *amicus curiae* Association of American Physicians & Surgeons. |

Peter S. Stamatis and Steven S. Shonder, both of Chicago, for *amicus curiae* Michael Benson.

Mark D. Deaton and Thaddeus J. Nodzenski, of Naperville, for *amicus curiae* Illinois Health and Hospital Association.

Justices
JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

Plaintiff, Steven I. Valfer, M.D., brought an action in Cook County circuit court seeking civil damages against defendant, Evanston Northwestern Healthcare, n/k/a NorthShore University HealthSystem (the hospital), based on the revocation of his privileges to practice at the hospital following a peer review conducted pursuant to the Illinois Hospital Licensing Act (Licensing Act) (210 ILCS 85/1 *et seq.* (West 2012)). The hospital filed a motion for summary judgment, arguing it was immune from damages under the Licensing Act and that it did not violate its bylaws in connection with deciding not to reappoint plaintiff. The trial court agreed, finding that the hospital was immune from suit and that it had complied with its bylaws and had not engaged in any wilful and wanton conduct. The appellate court affirmed. 2015 IL App (1st) 142284. We allowed plaintiff's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)) and now affirm the appellate court.

## BACKGROUND

Plaintiff is an obstetrician and gynecologist (OB-GYN) who has been licensed to practice medicine in Illinois since 1975. In November 2000 and September 2001, plaintiff was reappointed to the staff at defendant hospital. Relative to his September 2001 reappointment, plaintiff received a letter from the president of the hospital stating that plaintiff's reappointment would terminate May 31, 2002.

In February 2002, plaintiff applied for reappointment at the hospital. At that time, Dr. Kenneth Nelson, the division chief of gynecology at the hospital, reviewed one of plaintiff's gynecological surgeries and deemed that it did not meet relevant criteria. Specifically, Dr. Nelson learned plaintiff removed a woman's ovaries for treatment of menorrhagia—abnormal menstrual bleeding. Because that condition is not a recognized indication for the removal of ovaries, plaintiff's treatment raised patient safety concerns and led to a meeting between plaintiff and two other doctors at the hospital—Dr. Nelson and Dr. Richard Silver, who was the chairman of the OB-GYN department at the time.

¶ 5    Dr. Nelson and Dr. Silver found plaintiff to be unresponsive to their concerns at the meeting. As a result, Dr. Nelson conducted an additional review of 21 of plaintiff's surgical cases from the previous year and found that at least 50% of the cases "lack[ed] demonstrable indications for surgical intervention."

¶ 6    On June 4, 2002, Dr. Nelson and Dr. Silver once again met with plaintiff, this time to discuss all the unnecessary surgeries. Following their discussion, plaintiff voluntarily agreed to refrain from performing gynecological surgery until the pending issues were resolved. Plaintiff still retained other privileges at the hospital such as the right to admit patients. Also on June 4, 2002, Dr. Silver sent plaintiff a letter informing him that he would not recommend plaintiff for reappointment at the hospital. That same day, Dr. Silver notified the hospital operating room that plaintiff's operating privileges were suspended until further notice.

¶ 7    Dr. Silver explained in his letter to plaintiff that his recommendation against reappointment was based on patient safety and specifically that there were "[m]ultiple surgical cases for which approved indications for the intended procedures appear to be lacking." Dr. Silver also explained that if the executive committee accepted his recommendation against reappointment, plaintiff would be notified in writing.

¶ 8    On July 3, 2002, the hospital's executive committee met to discuss plaintiff's potential reappointment to the medical staff. The committee determined that it would recommend to the hospital's board of directors that plaintiff not be reappointed. On July 9, 2002, the president and chief executive officer (CEO) of the hospital sent plaintiff a certified letter stating that the recommendation to deny plaintiff's reappointment had been accepted. The letter set forth the reasons for the decision and explained plaintiff's right to request a hearing under the hospital bylaws and plaintiff's rights at such a hearing.

¶ 9    In 2004, the hospital held a hearing on the matter before a hearing committee, at which plaintiff was represented by counsel and was allowed to present evidence and examine witnesses. The hearing lasted three days. Plaintiff testified on his own behalf, and Dr. Nelson and Dr. Hansfield testified against plaintiff. Evidence was presented that both of the doctors testifying against plaintiff had offices in close proximity to plaintiff and were competitors of his. On July 21, 2004, the hearing committee upheld the executive committee's recommendation against reappointment.

¶ 10    The president and CEO of the hospital notified plaintiff in writing of the hearing committee's decision and reasoning and of plaintiff's right to appeal to an appellate review committee. In the meantime, plaintiff continued to retain privileges that he had not voluntarily relinquished and was able to continue to admit patients in accordance with the hospital bylaws.[1]

---

[1] From the time of his application for reappointment in February 2002 until the time his nonreappointment became final on March 16, 2005, the hospital's computer credentialing software indicated that plaintiff was an active staff member at the hospital. Any changes in the computer software, however, had to go through the medical executive committee. Thus, in response to inquiries about plaintiff's credentials in October 2002 and March 2004, the hospital sent out letters indicating that plaintiff was a member in good standing. This appears to be consistent with the fact that the decision against reappointment did not become final until March 16, 2005.

¶ 11    Plaintiff requested appellate review, and the appellate review committee upheld the recommendation against reappointment. The hospital board affirmed that decision on March 16, 2005, and plaintiff's nonreappointment became final and effective on that date.

¶ 12    On March 15, 2007, plaintiff filed his initial lawsuit against the hospital seeking civil damages arising out of the hospital's decision not to reappoint him. Thereafter, a lengthy procedural history (largely irrelevant to the issues presented in this appeal) ensued over the next seven years.

¶ 13    In February 2014, the hospital filed a motion for summary judgment seeking to dismiss plaintiff's breach of contract count,[2] which was the sole remaining claim in the case. In its motion, the hospital argued that it had complied with the applicable bylaws in deciding not to reappoint plaintiff, and therefore it could not be held liable for breach of contract. The hospital further argued that, pursuant to section 10.2 of the Licensing Act (210 ILCS 85/10.2 (West 2012)), it was immune from liability for civil damages and was likewise immune under the federal Health Care Quality Improvement Act of 1986 (HCQIA) (42 U.S.C. § 11101 *et seq.* (2012)). The trial court granted summary judgment in favor of the hospital on all three grounds.

¶ 14    The trial court first found that there was no genuine issue of material fact about whether plaintiff was reappointed after May 31, 2002. The court determined plaintiff was not reappointed after that date based on a number of facts. There were no documents advising him that he had been reappointed after that date as there had been for his September 2001 appointment. All of the deposition testimony was consistent in showing that he had not been reappointed. And plaintiff himself participated in all of the proceedings and never once challenged the characterization by the hospital of the hearings and investigations as being part of the reappointment process. Plaintiff also took advantage of all of the protections of the bylaws that govern the reappointment process and never invoked the protections available to doctors under the peer review process. Plaintiff also acknowledged on a number of occasions that the proceedings dealt with reappointment. Second, the court found that the immunity set forth in section 10.2 of the Licensing Act applied because the hospital basically put forth unrebutted evidence that plaintiff was afforded adequate notice and hearing procedures and that the hospital's decision upon reviewing plaintiff's request for reappointment was based on patient safety concerns.[3] Finally, the court determined that plaintiff provided insufficient evidence to support his allegations that the hospital's decision to discharge him was really a product of one doctor having an economic conflict with plaintiff and another doctor having moral objections to his practice.

¶ 15    Plaintiff appealed and made the following arguments before the appellate court: (1) he was "effectively reappointed" on May 31, 2002, because he was allowed to admit patients to the hospital after that date, and therefore a genuine issue of material fact exists as to whether the hospital was required to follow the bylaws applicable to peer review and suspension as

----

[2]The parties agree that the operative contract between the litigants is the hospital's medical staff bylaws, but the parties dispute which provisions of those bylaws govern the process under the circumstances of this case.

[3]The trial court agreed with plaintiff's theory that he could show "wilful and wanton misconduct" without showing physical harm, but disagreed that there was any evidence of "wilful and wanton misconduct" so as to raise a genuine issue of material fact on that score.

opposed to the bylaws applicable to reappointment that were applied by the hospital in this case; (2) immunity under the Licensing Act does not apply because the hospital was "wilful and wanton" in denying him privileges by failing to follow the appropriate bylaws and by allowing two of his competitors to partake in the peer review process; and (3) immunity under the HCQIA does not apply because the hospital did not follow the appropriate bylaws.

¶ 16    The appellate court affirmed the trial court's grant of summary judgment on the basis that the hospital was immune from suit under section 10.2 of the Licensing Act. 2015 IL App (1st) 142284, ¶¶ 33, 35. In so doing, the appellate court acknowledged that the immunity conferred by the statute contains an exception for wilful and wanton misconduct. Relying upon *Lo v. Provena Covenant Medical Center*, 356 Ill. App. 3d 538 (2005), and *Larsen v. Provena Hospitals*, 2015 IL App (4th) 140255, however, the appellate court found that to satisfy the wilful and wanton standard, a plaintiff must allege some type of physical harm to a person's safety or the safety of others. 2015 IL App (1st) 142284, ¶¶ 24, 26-27. Otherwise, under plaintiff's interpretation, which merely requires an intention to harm, the immunity of the Licensing Act would be rendered meaningless because every time a physician's privileges are suspended, he likely suffers loss of reputation and resulting economic harm, which could always be said to have been intended by a defendant hospital. *Id.* ¶ 28. The appellate court did not address the other two grounds upon which the trial court granted summary judgment in favor of the hospital.

¶ 17    Plaintiff filed a petition for leave to appeal with this court, which we allowed.

¶ 18                                                    ANALYSIS

¶ 19    This court conducts *de novo* review of a summary judgment ruling. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13. Moreover, the construction of a statute presents a question of law, which this court also reviews *de novo*. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16.

¶ 20    Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). A party opposing a motion for summary judgment cannot rest on its pleadings if the other side has supplied uncontradicted facts that would warrant judgment in its favor (*Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004)), and unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 132 (1992)).

¶ 21    Before this court, plaintiff first argues that the appellate court erred in construing the Licensing Act to mean that in order to satisfy the "wilful and wanton" exception to immunity, plaintiff must plead and prove that physical harm resulted from the hospital's actions. According to plaintiff, he has adequately shown "wilful and wanton misconduct" by merely alleging that the hospital did not follow its bylaws relating to the suspension of his privileges. In response, the hospital contends that plaintiff's argument starts from the faulty premise that he was "effectively reappointed" after May 31, 2002 (the date his appointment terminated). The hospital contends that there is no record evidence to support plaintiff's notion that he was reappointed after that date. Instead the record simply shows that he was allowed to continue on

with admitting privileges after that date while his application for reappointment was being reviewed under the specter of the issues being raised about the unnecessary surgeries. In any event, the hospital maintains that regardless of whether plaintiff was reappointed or not and whether the appropriate bylaws were followed or not, the appellate court correctly determined that plaintiff must plead and prove physical harm to establish wilful and wanton misconduct under the Licensing Act.

¶ 22  The parties' arguments present an issue of statutory construction. When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441 (2005). The best signal of legislative intent is the language employed in the statute, which must be given its plain and ordinary meaning. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31. Words and phrases should not be considered in isolation, however, and should be viewed in light of other relevant provisions of the statute. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320 (2003). And this court presumes that the legislature did not intend absurdity, inconvenience, or injustice. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. We will also avoid a construction of a statute that renders any portion of it meaningless. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 27. Where the statutory language is clear and unambiguous, it will be given effect without resort to other aids of construction. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13. But if the meaning of an enactment is unclear from the statutory language, the court may look beyond the language used and consider the purpose behind the law and the evils the law was designed to remedy. *Id.*

¶ 23  Turning to the statutory language at issue, we note that section 10.2 of the Licensing Act provides immunity to hospitals in connection with the physician review process as follows:

"§ 10.2. Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct, except those involving wilful or wanton misconduct, of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee or individual whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline \*\*\*. \*\*\* *For the purposes of this Section, 'wilful and wanton misconduct' means a course of action that shows actual or deliberate intention to harm or that, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others.*" (Emphasis added.) 210 ILCS 85/10.2 (West 2012).

¶ 24  The stated purpose of section 10.2 of the Licensing Act is "to encourage peer review by health care providers." *Id.* As our appellate court has repeatedly noted, the legislative aim of the statute is to foster self-policing by the medical profession in matters unique to that

profession and to thereby promote the legitimate State interest in improving the quality of health care. 2015 IL App (1st) 142284, ¶ 23; *Knapp v. Palos Community Hospital*, 176 Ill. App. 3d 1012, 1024 (1988); *Rodriguez-Erdman v. Ravenswood Hospital Medical Center*, 163 Ill. App. 3d 464, 470 (1987).

¶ 25    Reading section 10.2 as a whole, we find that the appellate court was correct in determining that the "wilful and wanton" exception is limited to physical harm. We agree that the only reasonable way to interpret the last sentence of the above-quoted section defining wilful and wanton misconduct is by finding that the phrase "utter indifference to or conscious disregard for a person's own safety and the safety of others" clarifies the kind of intentional "harm" the legislature had in mind. The last phrase of the exception's reference to safety clearly shows an intent that the harm contemplated is physical. Furthermore, if the legislature had intended to except from immunity any and all types of intentional harm, such as harm to one's reputation or economic well-being, it would surely negate the immunity entirely and would lead to an absurd result.

¶ 26    Plaintiff contends that "even though a termination of privileges is intentional, it can be accomplished in conformance with the hospital's bylaws [such that] the termination would most likely not be willful and wanton." But we note that if a physician cannot show a violation of the hospital bylaws, there is no need to reach the statute's immunity or the exception to that immunity because the physician could not establish a breach of contract in the first instance. On the other hand, if a physician could satisfy the statute's exception to immunity simply by establishing a bylaws violation, the immunity would never apply because, according to plaintiff, the breach itself would establish wilful and wanton misconduct. Plaintiff is thus essentially asking this court to render section 10.2 a nullity in contradiction of basic principles of statutory construction, and therefore we must reject his argument.

¶ 27    That is not to say that we believe that the language employed in the exception is flawless. As both parties acknowledge, "wilful and wanton" is a tort concept that has been incongruously engrafted into a statute that will largely be used to provide immunity for breach of contract claims. This is reinforced by the reality that Illinois law views wilful and wanton misconduct "as an aggravated form of negligence," *i.e.*, a tort. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010). A breach of contract is not considered a tort because intent or the willfulness of the breach is not relevant (*Morrow v. L.A. Goldschmidt Associates, Inc.*, 112 Ill. 2d 87, 94 (1986)) and a breach of contract presents solely economic losses that are not normally recoverable in tort actions (*In re Chicago Flood Litigation*, 176 Ill. 2d 179, 198, 201 (1997)). Thus, because "wilful and wanton" is a tort concept that applies only to reckless or intentionally tortious conduct that causes physical harm to a person or property, it has no application to a nontort claim such as a routine breach of contract action involving a violation of the hospital bylaws.[4]

¶ 28    In support of his position that physical harm is not required, plaintiff relies upon *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267 (1994), and a comment in the legislative debate on the 1999 amendment to section 10.2 that adopted the "wilful and wanton misconduct" language. We

---

[4]See *Morrow*, 112 Ill. 2d at 95 (There is also a rule against awarding punitive damages for breach of contract, and the only exception is when the conduct causing the breach is also an independent tort for which punitive damages are recoverable.).

- 7 -

find, however, that both matters actually support the appellate court's interpretation of the language.

¶ 29 *Ziarko* involved a truck-train collision that resulted in substantial physical injury. *Id.* at 269. This court was called upon to consider the parameters of the term "willful and wanton conduct" and concluded that the term is "a hybrid between acts considered negligent and behavior found to be intentionally tortious." *Id.* at 275. Furthermore, even the quote from *Ziarko* that plaintiff now relies upon shows the connection between tortious behavior and physical harm and safety:

> "Willful and wanton conduct includes that which was performed intentionally. [Citation.] However, unlike intentionally tortious behavior, conduct characterized as willful and wanton may be proven where the acts have been less than intentional—*i.e.*, where there has been 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' [Citation.]" *Id.* at 274.

¶ 30 Plaintiff points to a comment on the Senate floor when the 1999 amendment to section 10.2 was added, which indicates that the legislature intended to adopt the "standard definition" of "wilful and wanton" along the line of *Ziarko*. We note that the definition of the term that the legislature actually provided for in the statute speaks for itself. But we also conclude that, consistent with *Ziarko*, the standard definition limits the concept of wilful and wanton to physical harm.

¶ 31 Plaintiff argues that the appellate court's holding "eviscerates" this court's decision in *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497 (1989), which involved the immunity in a different statute, section 2b of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, ¶ 4406). *Adkins* held that "there is, in cases involving private hospital staff privileges, a 'rule of non-review' under which, as a matter of public policy, internal staffing decisions of private hospitals are not subject, except as hereinafter stated, to judicial review." *Adkins*, 129 Ill. 2d at 506. The court went on to observe that the "judicial reluctance to review these internal staff decisions reflects the unwillingness of courts to substitute their judgment for the professional judgment of hospital officials with superior qualifications to consider and decide such issues." *Id.* at 507. The court further found, however, that "[a]n exception exists [to the rule of non-review] when the decision involves a revocation, suspension or reduction of existing staff privileges. In such cases, the hospital's action is subject to a limited judicial review to determine whether the decision was made in compliance with the hospital's bylaws." *Id.* at 506-07. The court went on to note that the physician in that case was given the basic due process rights of notice and a full opportunity to defend himself in a hearing. *Id.* at 510.

¶ 32 We do not find *Adkins* controlling under the circumstances of the present case. Here, plaintiff was represented by counsel at all times and was afforded a thorough course of due process hearings and reviews. Plaintiff never once complained that the wrong process was followed until he filed his amended complaint in circuit court. *Adkins* also involved a different statute, section 2b of the Medical Practice Act. Moreover, *Adkins* did not conduct an analysis of the actual language of the statutory immunity in that case, nor did it consider any arguments similar to the ones presented in this case based on the statutory language of section 10.2 of the Licensing Act. Additionally, a year after *Adkins* was decided, this court expressly held that

- 8 -

"the exception for willful or wanton misconduct that is contained in section 2b of the Medical Practice Act was intended to apply only to the immunity created within that section of the Medical Practice Act, and not to the entirely separate immunity created by section 10.2 of the Hospital Licensing Act." *Cardwell v. Rockford Memorial Hospital*, 136 Ill. 2d 271, 278 (1990). We also note that *Adkins* was decided 10 years before the legislature supplied the definition of "wilful and wanton misconduct" contained in section 10.2 of the Licensing Act in question here. For all of these reasons, then, *Adkins* does not militate against the result we reach in this case.

¶ 33    Plaintiff asserts that the appellate court's decision gives hospitals absolute immunity for their staffing decisions and would deprive doctors of access to the courts in breach of contract cases. *Amici curiae* in support of plaintiff, the Association of American Physicians and Surgeons, the Illinois Trial Lawyers Association, and Dr. Michael Benson, argue in similar fashion that the appellate court's decision would open the door to "sham peer review" and would shield intentional discrimination without any remedies for the physicians who suffer from such misconduct. We disagree.

¶ 34    Our decision today should not be interpreted as condoning sham peer review. Section 10.2 of the Licensing Act immunizes a hospital and those involved in its quality reviews from *civil damages* only, and then only if the review was undertaken based on the actual purpose specified by the statute—*i.e.*, to maintain or improve the quality of health care.

¶ 35    First, we note that the statute does not provide absolute immunity from all legal challenges to all decisions made by hospital peer review committees. Other remedies, such as injunctive and declaratory relief, remain available, and this is consistent with the notion expressed in *Adkins* that a hospital's actions are subject to limited judicial review to determine whether the decision was made in compliance with the hospital's bylaws. If a physician has a quarrel with his treatment under the bylaws, he can bring a timely claim for injunctive relief to make sure the proper procedures are followed. Also, tort actions that allege physical harm, such as physical harm resulting from intentional infliction of emotional distress, would be subject to the "wilful and wanton misconduct" language of the Licensing Act because physical harm is a part of such claims. Moreover, the Illinois statute cannot be read to take precedence over federal civil rights statutes that might be applicable for certain types of misconduct.

¶ 36    Second, and most importantly, we note that section 10.2 is clear and expressly states that its immunity is only afforded in a case like the present one where the purpose of the decision or action on the part of the hospital is "internal quality control *** or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline." 210 ILCS 85/10.2 (West 2012). In the event that a plaintiff physician alleges well-pleaded facts—which are not based on mere speculation or unsupported conclusions—to indicate that the purpose of the discipline was not based on the grounds enunciated in the statute but was instead a sham, he or she may advance his claim beyond a motion to dismiss on the pleadings.

¶ 37    We realize that the "wilful and wanton misconduct" exception is silent about motive and instead only speaks to whether the decision of the hospital was intentional or not. However, this point does not address whether the general immunity language of the statute is applicable in the first instance, which requires that the purpose of the hospital's decision be for quality health care and not some other sham purpose. See 210 ILCS 85/10.2 (West 2012).

¶ 38 Here, plaintiff's claim advanced beyond the pleadings despite the conclusory nature of his allegations. Instead his claim was only disposed of after a full hearing on the hospital's motion for summary judgment. As the trial court correctly noted, plaintiff alleged that one doctor had "economic cause for doing harm and another ha[d] moral objections to his practice but [plaintiff] provided insufficient evidence to raise a genuine issue of material fact to refute the [hospital's] evidence" on those matters.

¶ 39 This was clearly the correct result based on this record, and plaintiff makes no effort to put forth a contrary argument before this court. We find that a case cited by plaintiff—*Levitin v. Northwest Community Hospital*, 64 F. Supp. 3d 1107 (N.D. Ill. 2014)—is instructive and shows that the proper result was reached in this case. In *Levitin*, the plaintiff alleged a plethora of well-pleaded facts to indicate that the peer review process in that case was not undertaken in reasonable belief that the disciplinary action was in furtherance of quality health care but rather to retaliate against the plaintiff for complaining about another doctor's abusive behavior and false complaints. In denying the hospital's motion to dismiss, the federal district court in *Levitin* noted that at this stage in the proceedings, the plaintiff's factual allegations were presumed to be true and, if true, would ultimately deprive the hospital of immunity. *Id.* at 1121. This was so because the plaintiff had alleged plausible grounds "to doubt that [the defendants] acted under the reasonable belief that their actions were taken in the furtherance of quality health care." *Id.*[5] The court cautioned, however, that the "evidence adduced in discovery and presented on summary judgment or at trial may cast the case in a different light," such that immunity might be found to be applicable. *Id.*

¶ 40 Similar to *Levitin*, the hospital's initial motion to dismiss in the present case was denied. This case, however, presents the scenario envisioned in *Levitin* where the facts adduced on summary judgment cast the case in a different light and establish that there is no genuine issue of material fact as to the purpose of the hospital's decision to not reappoint plaintiff.[6]

¶ 41 Plaintiff next argues that as construed by the appellate court, section 10.2 of the Licensing Act (1) constitutes impermissible special legislation because it grants hospitals absolute immunity for their staffing decisions and (2) deprives doctors of the right to access the courts. We find no merit to plaintiff's arguments.

---

[5]As an additional basis for its decision, the court in *Levitin* found that the allegations also established that the defendants engaged in wilful and wanton misconduct. For the reasons noted above, we do not agree with that statement. But we do agree that a hospital cannot claim immunity for actions that are a sham and which are not actually undertaken in reasonable belief that they are in furtherance of quality health care. This is because in such a case the hospital's action would not fall within the immunity language of the statute in the first place.

[6]*Mallapudi v. Mercy Hospital & Medical Center*, No. 07 C 2053, 2007 WL 4548293, at *9 (N.D. Ill. Dec. 17, 2007), is another case where a federal district court found the plaintiff's allegations of a sham purpose at work in his dismissal to be sufficient to survive a motion to dismiss. But the court noted that the immunity of the Licensing Act may ultimately be found to be applicable at a later stage in the proceedings. The court also explained that even at the pleading stage, the plaintiff's "allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a speculative level; if they do not, the plaintiff pleads [him]self out of court." (Internal quotation marks omitted.) *Id.* at *4.

¶ 42   A statute violates the special legislation clause of the Illinois Constitution only if (1) it confers on a person, entity, or class of persons or entities a special benefit or exclusive privilege that is denied to others who are similarly situated and (2) the classification is arbitrary. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 236-37 (2005). Plaintiff's argument starts from the faulty premise that section 10.2 of the Licensing Act confers absolute immunity on hospitals for their staffing decisions. Thus, there is no need to consider his argument further, other than to note that our decision correctly prescribes the limits of the immunity available under the Licensing Act and there is no special benefit being conferred to which others similarly situated are not entitled. Nor is the classification the statute draws in creating limited immunity for hospitals an arbitrary one.

¶ 43   We also note that there is no support for plaintiff's contention that the Licensing Act denies physicians access to the courts. Again, we have explained that physicians may bring injunctive and declaratory actions to force compliance with hospital bylaws, they may maintain tort actions where physical harm is alleged as part of the wilful and wanton component, and they may maintain other kinds of civil damage actions against a hospital where the hospital's acts or decisions can be said to be a sham rather than in furtherance of quality health care.

¶ 44   Our resolution of the above-discussed issues renders it unnecessary for us to address the remaining issues raised by the parties.

¶ 45                              CONCLUSION

¶ 46   For the foregoing reasons, we affirm the appellate court's decision to affirm the trial court's order granting summary judgment in favor of the hospital.

¶ 47   Affirmed.